IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-382-D

| | |
|---|---|
| SCOTT HUBBARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| EITAN GROUP NORTH AMERICA ) | |
| d/b/a EITAN MEDICAL, and ) | |
| ROGER MASSENGALE, ) | |
| individually and in his official capacity, ) | |
| ) | |
| Defendants. ) | |

On August 2, 2022, Scott Hubbard ("Hubbard" or "plaintiff") filed this action in Wake County Superior Court [D.E. 1-1]. On September 22, 2022, Eitan Group North America ("Eitan") and Robert Massengale ("Massengale") (collectively "defendants") timely removed the action to this court [D.E. 1]. On September 29, 2022, defendants moved to dismiss for lack of personal jurisdiction and improper venue and, alternatively, to transfer the action to the United States District Court for the Central District of California [D.E. 6] and filed a declaration [D.E. 7] and memorandum in support [D.E. 8]. On November 28, 2022, Hubbard responded in opposition [D.E. 13]. On December 15, 2022, defendants replied [D.E. 15]. As explained below, the court grants defendants' motion to transfer, transfers this action to the United States District Court for the Central District of California, and denies as moot defendant's motion to dismiss for lack of personal jurisdiction and improper venue.

I.

This employment action concerns defendants' alleged non-payment of $1,800,000 in commission wages to Hubbard. Eitan employed Hubbard from July 9, 2019, through June 16, 2021. See [D.E. 1-1] ¶ 10. Hubbard lived and worked in Maryland from when Eitan hired him until he moved to North Carolina. The parties dispute when Hubbard moved to North Carolina. The court assumes without deciding that Hubbard moved to North Carolina for personal reasons on May 2, 2020. See [D.E. 1] ¶ 6; [D.E. 1-1] ¶ 3; [D.E. 8] 2; [D.E. 7] ¶ 6; [D.E. 7-1]; but see [D.E. 7-1]; [D.E. 13] 6. Eitan knew from the outset of Hubbard's employment that Hubbard would work remotely out of his home. See [D.E. 7] ¶ 6; [D.E. 7-1]; [D.E. 13-1] ¶ 23. Eitan is incorporated in Delaware and maintains its principal place of business in Aliso Viejo, California. See [D.E. 1-1] ¶ 5; [D.E. 7] ¶ 3; [D.E. 8] 2. Eitan does not maintain any officers or facilities in North Carolina and does not employ anyone in North Carolina. See [D.E. 7] ¶ 3; [D.E. 8] 2. Eitan hired Massengale to start Eitan's North America operations. Massengale is Eitan's Chief Commercial Officer and resides and is domiciled in Mission Viejo, California. See [D.E. 7] ¶ 4; [D.E. 8] 2.

Hubbard alleges wage claims against both defendants under the North Carolina Wage and Hour Act and the Maryland Wage Payment and Collection Law. Hubbard also alleges breach of contract and unjust enrichment claims against Eitan. Essentially, Hubbard alleges that on March 2, 2020, Eitan provided him with its 2020 Sales Compensation Plan ("Plan") which was effective from January 1, 2020, through December 31, 2020. See [D.E. 1-1] ¶ 14. In March 2020, Hubbard met his sales quota. See id. at ¶ 18. On March 24, 2020, Hubbard secured two orders which, pursuant to the Plan, entitled him to $2,400,000 in commissions because Hubbard already met his sales quota. See id. at ¶¶ 21, 28. On April 1, 2020, Eitan provided Hubbard an amendment to the 2020 Plan reducing the commission on Hubbard's March 24, 2020 sales from eight percent to two percent,

2

thereby reducing his commissions from $2,400,000 to $600,000. See id. at ¶ 29. Hubbard lived in Maryland when the sales occurred and when Eitan changed the Plan. See [D.E. 13] 6. In August 2020, Eitan paid Hubbard (who was then living in North Carolina) $600,000 in commissions. See [D.E. 1-1] ¶ 31; [D.E. 13] 6. Hubbard alleges that defendants owe him an additional $1,800,000 and that defendants breached the Plan when defendants changed the Plan and failed and refused to pay the additional $1,800,000 in commissions. See [D.E. 1-1] ¶¶ 38–67.

II.

Defendants move to dismiss for lack of personal jurisdiction. See [D.E. 6]; Fed. R. Civ. P. 12(b)(2). Due process requires a defendant to have "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Helicopteros Nacionales de Colom., S.A. v. Hall, 466 U.S. 408, 414 (1984) (alteration and quotations omitted). The minimum contacts analysis focuses on whether a defendant "purposefully directed his activities at residents of the forum" and whether the causes of action arise out of or relate to those activities. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985); see Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1024–25 (2021). The minimum contacts analysis ensures that a defendant is not haled into a jurisdiction's court "solely as a result of random, fortuitous, or attenuated contacts." Burger King, 471 U.S. at 475 (quotations omitted); see Ford Motor Co., 141 S. Ct. at 1025. The minimum contacts analysis focuses "on the relationship among the defendant, the forum, and the litigation." Walden v. Fiore, 571 U.S. 277, 284 (2014) (quotation omitted); see Ford Motor Co., 141 S. Ct. at 1024–25; Bristol-Myers Squibb Co. v. Superior Ct., 137 S. Ct. 1773, 1781 (2017).

The extent of the contacts needed for personal jurisdiction turns on whether the claims asserted against a defendant relate to or arise out of the defendant's contacts with the forum state.

3

See Ford Motor Co., 141 S. Ct. at 1025; Bristol-Myers Squibb, 137 S. Ct. at 1780; ALS Scan, Inc. v. Dig. Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002); Atlantic Corp. of Wilmington, Inc. v. TBG Tech. Co., 565 F. Supp. 3d 748, 760 (E.D.N.C. 2021). If the defendant's contacts with the state are the basis for the suit, specific jurisdiction may exist. ALS Scan, 293 F.3d at 712. In determining specific jurisdiction, the court considers: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." Id. (alteration and quotations omitted). Thus, the "constitutional touchstone" of specific personal jurisdiction "remains whether the defendant purposefully established minimum contacts in the forum State." Burger King Corp., 471 U.S. at 474 (quotation omitted); see Bristol-Myers Squibb, 137 S. Ct. at 1781–82; Walden, 571 U.S. at 284–91.[1]

First, in analyzing the extent to which a defendant purposefully availed itself of the privilege of conducting activities within a State, a court examines "various non-exclusive factors" including:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the

---

[1] If a defendant's contacts with the forum state are not the basis of the causes of action, general jurisdiction may "arise from the defendant's general, more persistent, but unrelated contacts with the State." ALS Scan, 293 F.3d at 712. To establish general jurisdiction, a defendant's contacts with the forum state must be both continuous and systematic. The general jurisdiction standard is more demanding than the specific jurisdiction standard. See id.; BNSF Ry. Co. v. Tyrrell, 137 S. Ct. 1549, 1558–59 (2017); Daimler AG v. Bauman, 571 U.S. 117, 131–33 (2014); Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 926–29 (2011); Helicopteros, 466 U.S. at 414–16; World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 291–99 (1980). Here, the parties agree that general jurisdiction does not exist. See [D.E. 13] 4.

relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

UMG Recordings, Inc. v. Kurbanov, 963 F.3d 344, 352 (4th Cir. 2020) (quotation omitted); see Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009); Atlantic Corp. of Wilmington, Inc., 565 F. Supp. 3d at 760.

Second, the plaintiff's claims must have arisen out of or relate to those activities that the defendant directed at the State. See Ford Motor Co., 141 S. Ct. at 1026–32; UMG Recordings, 963 F.3d 354–55; Atlantic Corp. of Wilmington, Inc., 565 F. Supp. 3d at 760.

Third, the court must analyze whether the exercise of personal jurisdiction is constitutionally reasonable. See Ford Motor Co., 141 S. Ct. at 1030; Bristol-Myers Squibb, 137 S. Ct. at 1780–81; Burger King, 461 U.S. at 476–78; World-Wide Volkswagon, 444 U.S. at 292; Consulting Eng'rs, 561 F.3d at 279; Atlantic Corp. of Wilmington, Inc., 565 F. Supp. 3d at 760–61. This analysis "permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there." Consulting Eng'rs, 561 F.3d at 279. Such factors include:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social polices.

Id.

Defendants argue that they have not purposefully availed themselves of the privilege of conducting business in North Carolina and, therefore, do not have the minimum contacts with North Carolina necessary to justify this court exercising personal jurisdiction over them. See [D.E. 8] 3–6; [D.E. 15] 1–7. Hubbard responds that this court has specific personal jurisdiction over defendants

5

because defendants directed activities to North Carolina, Hubbard's alleged injuries arose in North Carolina, and the exercise of personal jurisdiction would be constitutionally reasonable. See [D.E. 13] 4–10.

Hubbard has failed to establish that defendants had the minimum contacts with North Carolina necessary to justify this court exercising specific personal jurisdiction over the defendants. As mentioned, the court considers a non-exclusive list of eight factors to decide whether defendants purposefully availed themselves of the privilege of doing business in North Carolina. See UMG Recordings, 963 F.3d at 352; Consulting Eng'rs, 561 F.3d at 278; Atlantic Corp. of Wilmington, Inc., 565 F. Supp. 3d at 761–65. The court focuses on "the quality and nature of the defendant's connections, not merely the number of contacts between the defendant and the forum state." UMG Recordings, 963 F.3d at 352 (emphasis omitted). The inquiry is "defendant-focused," and "the plaintiff cannot be the only link between the defendant and the forum." Walden, 571 U.S. at 284–85; see Fidrych v. Marriott Int'l, Inc., 952 F.3d 124, 138–44 (4th Cir. 2020); Perdue Foods, LLC v. BRF S.A., 814 F.3d 185, 189–92 (4th Cir. 2016); Atlantic Corp. of Wilmington, Inc., 565 F. Supp. 3d at 761–65.

First, defendants do not maintain offices or have employees in North Carolina. See [D.E. 1-1] ¶ 5; [D.E. 7] ¶¶ 3, 4; [D.E. 8] 2. Second, defendants do not maintain offices or property in North Carolina. See [D.E. 1-1] ¶ 5; [D.E. 7] ¶¶ 3, 4; [D.E. 8] 2.

Third, the court considers whether the defendants "reached into" North Carolina "to solicit or initiate business." UMG Recordings, 963 F.3d at 352 (quotation omitted); see Consulting Eng'rs, 561 F.3d at 278; Atlantic Corp. of Wilmington, Inc., 565 F. Supp. 3d at 762. Defendants did not reach into North Carolina to solicit or initiate any business. Rather, Hubbard initiated the only contacts with North Carolina. Although Hubbard argues that Eitan recruited him to sell in North

Carolina and knew that he moved to North Carolina during his employment, there is no evidence besides Hubbard's declaration that Eitan intended to target North Carolina. [D.E. 13-1] ¶¶ 22, 23. Moreover, Hubbard lived in Maryland, not North Carolina, when Eitan first employed him. Hubbard moved to North Carolina for his own convenience after Hubbard began his employment with Eitan. See [D.E. 1] ¶ 6; [D.E. 1-1] ¶ 3; [D.E. 8] 2; [D.E. 7] ¶ 6; but see [D.E. 13] 6; [D.E. 1-1] ¶¶ 33, 35. Furthermore, paying commissions in North Carolina for work done and pay allegedly earned in Maryland does not suffice to establish specific jurisdiction in North Carolina. See [D.E. 13] 6; cf. Perry v. Nat. Assoc. of Home Builders of U.S., No. 20-0454, 2020 WL 5759766, at *5 (D. Md. Sept. 28, 2020) (unpublished) (collecting cases); Fields v. Sickle Cell Disease Assoc. of Am., Inc., 376 F. Supp. 3d 647, 650–53 (E.D.N.C. 2018), aff'd, 770 F. App'x 77 (4th Cir. 2019) (per curiam) (unpublished).

Fourth, defendants have not "deliberately engaged in significant or long-term business activities in" North Carolina. UMG Recordings, 963 F.3d at 352 (quotation omitted); see Consulting Eng'rs, 561 F.3d at 278; Atlantic Corp. of Wilmington, Inc., 565 F. Supp. 3d at 762. Defendants have never intentionally had significant or long-term business activities in North Carolina. See [D.E. 7-1, 8, 15]. And besides Hubbard's allegations in this case, Hubbard has not identified any business activities of defendants in North Carolina, much less significant or long-term business activities.

Fifth, the only choice of law provision in this case is Eitan's Plan, which provides that "it shall be governed by and construed in accordance with the laws of California." [D.E. 7] ¶ 7. Sixth, defendants did not make "in-person contact with a resident" of North Carolina "regarding the business relationship." UMG Recordings, 963 F.3d at 352 (quotation omitted); see Consulting Eng'rs, 561 F.3d at 278; Atlantic Corp. of Wilmington, Inc., 565 F. Supp. 3d at 762–63. Although

7

the parties had significant online communications once Hubbard moved to North Carolina, they had no in-person contact with each other in North Carolina. See [D.E. 7-1] ¶¶ 3, 4; [D.E. 13] 3–5, 9.

Seventh, the parties' arrangements did not require Eitan to perform its contractual duties in North Carolina. See UMG Recordings, 963 F.3d at 352; Consulting Eng'rs, 561 F.3d at 278. Eitan hired Hubbard when he lived in Maryland, and he moved to North Carolina to work remotely for his own convenience on May 2, 2020. Cf. Fields, 376 F. Supp. 3d at 653 (holding that a company accommodating an employee's desire to move and supplying materials to the employee necessary to work from home in the new location did not purposefully avail the company to the state where the employee moved).

Finally, the court considers "the nature, quality, and extent of the parties' communications about the business being transacted." UMG Recordings, 963 F.3d at 352 (quotation omitted); see Consulting Eng'rs, 561 F.3d at 278. According to Hubbard, Eitan communicated with him frequently while he was in North Carolina. See [D.E. 13] 3, 5, 9, 11. However, "mere communications sent from outside the forum do[ ] not establish presence in that jurisdiction." Szulik v. TAG V.I., Inc., 783 F. Supp. 2d 792, 796 (E.D.N.C. 2011); see Stover v. O'Connell Assocs., Inc., 84 F.3d 132, 137 (4th Cir. 1996); Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1198–1200 (4th Cir. 1993); Chung v. NANA Dev. Corp., 783 F.2d 1124, 1126–30 (4th Cir. 1986); Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc., 239 F.2d 502, 504–08 (4th Cir. 1956); Atlantic Corp. of Wilmington, Inc., 565 F. Supp. 3d at 763–65. Stated differently, "although many contacts between the two parties occurred via email, telephone, or instant messaging, such communications do not provide sufficient contacts to justify exercising personal jurisdiction" over the defendants in North Carolina in this case. Cricket Grp., Ltd. v. Highmark, Inc., 198 F. Supp. 3d 540, 544 (D. Md. 2016); see Pharmabiodevice Consulting, LLC v. Evans, No. 14-00732, 2014 WL 3741692, at *4 (D. Md. July

8

28, 2014) (unpublished); Springs v. Ally Fin., Inc., No. 3:10-CV-311, 2010 WL 4818669, at *9–10 (W.D.N.C. Oct. 14, 2010) (unpublished), report and recommendation adopted, 2010 WL 4823242 (W.D.N.C. Nov. 19, 2010) (unpublished); Johansson Corp. v. Bowness Constr. Co., 304 F. Supp. 2d 701, 706 (D. Md. 2004). Accordingly, the parties' communications alone do not justify this court exercising personal jurisdiction over the defendants, especially when all seven other factors weigh against the exercise of personal jurisdiction. See Atlantic Corp. of Wilmington, Inc., 565 F. Supp. 3d at 765–66.

In opposition, Hubbard argues that Stuart v. Churn, LLC, No. 1:19-CV-369, 2019 WL 2342354, at *5 (M.D.N.C. June 3, 2019) (unpublished), and Winner v. Tryko Partners, LLC, 333 F. Supp. 3d 250, 256, 264 (W.D.N.Y. 2018), support his argument that this court has specific personal jurisdiction over defendants. See [D.E. 13] 7–9. However, in Stuart, the plaintiff lived and worked in North Carolina from the time his employers hired him until the time he filed suit, his employers provided him an allowance to support office expenses in North Carolina, and his employers knew that he was working with specific contacts in North Carolina to expand the employers' business in North Carolina. These facts established that the plaintiff's claims for breach of an employment agreement, fraud, unjust enrichment, breach of fiduciary duty, and unfair and deceptive trade practices arose "out of [the employers'] North Carolina contact with Mr. Stuart related to his employment." Stuart, 2019 WL 2342354, at *5. Assuming without deciding that Hubbard moved to North Carolina on May 2, 2020, Hubbard lived in Maryland when Eitan hired him, when he allegedly earned the disputed commissions, and when defendants changed the Plan. The only possible event related to his claims that occurred after Hubbard moved to North Carolina was Hubbard receiving the $600,000 payment from Eitan. Hubbard's mere presence in North Carolina

when he collected the $600,000 (but not the disputed $1,800,000) does not suffice to establish personal jurisdiction.

As for Winner, the case is distinguishable. Unlike in this case, Winner's employer employed him to work from home in a particular state, Winner had his employer's approval to live and work in the state, and Winner's employer directed him to attend multiple business meetings in the state. See Winner, 333 F. Supp. 3d at 256, 264.

Defendants do not have the requisite minimum contacts with North Carolina to warrant this court exercising personal jurisdiction. Although Hubbard's claims arise from and relate to defendants' conduct, the claims do not arise from or relate to conduct that the defendants directed at North Carolina. See Ford Motor Co., 141 S. Ct. at 1026–32; UMG Recordings, 963 F.3d at 354–55; Fidrych, 952 F.3d at 138–44; Perdue Foods, 814 F.3d at 188–92; Consulting Eng'rs, 561 F.3d at 278–82; Atlantic Corp. of Wilmington, Inc., 565 F. Supp. 3d at 759–66; see also Perry, 2020 WL 5759766, at *5; Fields, 376 F. Supp. 3d at 650–53. Thus, this court lacks personal jurisdiction over the defendants.

III.

Alternatively, defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(3) for improper venue. Venue is proper in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, . . .; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). A natural person resides where he is domiciled. Id. § 1391(c)(1). A corporate entity defendant resides in any judicial district where it is subject to the court's personal jurisdiction with respect to the case. Id. § 1391(c)(2).

Under 28 U.S.C. § 1391(b)(2), courts must focus on "the entire sequence of events underlying the claim" and "should not focus only on those matters that are in dispute or that directly led to the filing of the action." Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004); see Uffner v. La Reunion Francaise, S.A., 244 F.3d 38, 42 (1st Cir. 2001). Although an event need not be in dispute to be considered substantial, it must "give rise to the claim." Mitrano, 377 F.3d at 405.

Defendants reside in the California. Therefore, venue is proper in California under section 1391(b)(1). See [D.E. 1-1] ¶ 5; [D.E. 7] ¶¶ 3, 4; [D.E. 8] 2. As for section 1391(b)(2), a substantial part of the events or omissions giving rise to the claims occurred in the Central District of California. See [D.E. 1-1]. None of the events giving rise to the claims occurred in North Carolina, besides the payment of Hubbard's $600,000 commission.

In opposition to this conclusion, Hubbard argues that substantial events giving rise to his claims occurred in North Carolina because he lived in North Carolina when defendants allegedly did not properly pay his wages. See [D.E. 13] 10–13. Hubbard's residence in North Carolina, however, does not suffice to conclude that a substantial part of the events or omissions giving rise to his claims occurred in North Carolina. Compare [D.E. 8] 2 and [D.E. 7] ¶ 6 and [D.E.7-1] with [D.E. 13] 6 and [D.E. 1-1] ¶¶ 33, 35. The venue statute protects "the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial." Leroy v. Great W. United Corp., 443 U.S. 173, 184 (1979). In seeking to litigate this dispute in the Eastern District of North Carolina, Hubbard seeks to force defendants to litigate in an inconvenient place.

11

Because venue is proper in California under section 1391(b)(1) and (2), venue cannot be proper under subsection (3). Therefore, venue is not proper in the Eastern District of North Carolina.

IV.

A court need not have personal jurisdiction over a defendant to transfer a case pursuant to 28 U.S.C. §§ 1404(a) or 1406(a). See Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962); O'Neal v. Hicks Brokerage Co., 537 F.2d 1266, 1268 (4th Cir. 1976). Questions regarding transfer under section 1404(a) are committed to the sound discretion of the district court. See, e.g, Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); Brock v. Entre Comput. Ctrs., Inc., 933 F.2d 1253, 1257 (4th Cir. 1991). Under 28 U.S.C. § 1404(a), a district court may transfer a case for the convenience of the parties and witnesses, in the interest of justice, to any other district where the action might have been brought, or to any district to which all parties consent. Additionally, a district court may dismiss an action, or if it is in the interest of justice, transfer an action if venue is improper in the transferor court. See 28 U.S.C. § 1406(a). Even if venue is proper in the transferor court, transfer may be made under section 1406(a) for any reason which constitutes an impediment to a decision on the merits. See, e.g., Porter v. Groat, 840 F.2d 255, 257–58 (4th Cir. 1988); Jenkins v. Albuquerque Lonestar Freightliner, LLC, 464 F. Supp. 2d 491, 494 (E.D.N.C. 2006).

This court lacks personal jurisdiction over defendants, and venue is not proper in the Eastern District of North Carolina. Venue, however, is proper in the Central District of California, and the court must decide whether to transfer this case to the Central District of California "in the interests of justice." 28 U.S.C. § 1406(a); see Szulik, 858 F. Supp. 2d at 548; Dacar v. Saybolt, LP, No. 7:10-CV-12, 2011 WL 223877, at *2 (E.D.N.C. Jan. 24, 2011) (unpublished); Blue Mako, Inc. v. Minidis, 472 F. Supp. 2d 690, 703 (M.D.N.C. 2007). A district court must "consider four factors when deciding whether to transfer venue: (1) the weight accorded to plaintiff's choice of venue; (2)

12

witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc., 791 F.3d 436, 444 (4th Cir. 2015). In balancing these factors, a district courts has substantial discretion to decide whether to transfer venue. See Stewart Org., Inc., 487 U.S. at 29; Brock, 933 F.2d at 1257; Jenkins, 464 F. Supp. 2d at 493. The court considers each factor in turn.

As for plaintiff's choice of forum, Hubbard filed this action in the Eastern District of North Carolina. See [D.E. 1]. Thus, this first factor does not weigh in favor of transfer.

As for the convenience of the witnesses and the ease of access to evidence, all documents regarding Hubbard's sales and compensation are maintained in California, and defendants' witnesses are located in either California or Israel. See [D.E. 8] 9; [D.E. 7] ¶ 7. Moreover, this court lacks personal jurisdiction over Eitan and Massengale. Thus, this second factor weighs in favor of transfer.

As for the convenience of the parties, Hubbard resides and is domiciled in the Eastern District of North Carolina but resided in Maryland at the start of his employment with Eitan and when the events concerning Hubbard's claims initially arose. See [D.E. 1] ¶ 6; [D.E. 1-1] ¶ 3; [D.E. 8] 2; [D.E. 7] ¶ 6; [D.E. 7-1]; [D.E. 13] 6. Defendants reside and are domiciled in the Central District of California. See [D.E. 1-1] ¶ 5; [D.E. 7] ¶¶ 3, 4; [D.E. 8] 2. Eitan is incorporated in Delaware and maintains its principal place of business in Aliso Viejo, California. See [D.E. 1-1] ¶ 5; [D.E. 7] ¶ 3; [D.E. 8] 2. Eitan does not maintain any officers or facilities in North Carolina and does not employ anyone in North Carolina. See [D.E. 7] ¶ 3; [D.E. 8] 2. Massengale resides and is domiciled in Mission Viejo, California. See [D.E. 7] ¶ 4; [D.E. 8] 2. Thus, this third factor weighs in favor of transfer.

As for the interests of justice, this factor implicates many considerations. One such consideration is the particular interest a forum may have in deciding a case, and the local interest in having localized controversies settled at home. The alleged wrongful acts occurred primarily in the Central District of California. Moreover, the Plan upon which Hubbard relies in this action provides that "it shall be governed by and construed in accordance with the laws of California." [D.E. 7] ¶ 7. The Central District of California has a particular interest in deciding cases involving California law, particularly when those cases are brought against a California corporation and one of its employees. Thus, this fourth factor strongly weighs in favor of transfer. Having reviewed the record and the interests of justice, the court transfers this action to the Central District of California.

V.

In sum, the court GRANTS defendants' motion to transfer [D.E. 6] and TRANSFERS this action to the United States District Court for the Central District of California. The court DENIES as moot defendants' motion to dismiss for lack of personal jurisdiction and improper venue.

SO ORDERED. This 14 day of April, 2023.

JAMES C. DEVER III
United States District Judge

14